here you hear D. A horrible honorable brother Claren please be seated. Your hon governor. Yeah, Stay with miss Gary horn silver. Y Mhm. miss silver. Mhm Yes. Good morning. Your honors may please record. My name is sheri silver and I represent Mr Garcia in this appeal. Your honor, this case is so complicated and it has so many issues and so many very problems that it really can be overwhelming. But we were able to narrow it down to the four issues that were raised in the appeal, each one being intensely fact specific. Suffice it to say at this point that Priscilla Garcia was convicted following a bench trial of home invasion and murder and he was I would like to focus just on a couple of the issues, those being the reasonable doubt and the crankle. But I would be happy to answer any questions you have about the post trial motion issue or the sentencing issue. As for the reasonable doubt, this case rested on the testimony of Anthony Ortiz, one of the intruders who broke into the Magana home on Chestnut Street in Aurora. What about the DNA on the red mask? The DNA is the only evidence that could possibly conceivably show that Garcia was there. And we admit that that there's DNA evidence that was found on the gray glove and on the red and black mask and the red and black mask. The DNA. The only explanation in the evidence for that is the defendant's presence and participation in the home invasion. Correct. But that only came from Anthony Ortiz. Well, no, it came from the red black mass that was recovered from crime scene. Yes. And we're saying that there was DNA found at 11 locate Lyle Boykin, who was the state's exclusion of every other person in the world. No, it was a mixed profile. No, it was a minor profile was I think it was 1 650 billion. Those numbers are always astounding. It might mean they're always astounding. But but yes, it was there was a mixed profile at 11 loci and he was the middle minor profile. There was a major unidentified profile. As I asked, you said that comes down to Ortiz's testimony. It doesn't just come down to Ortiz's testimony comes down to the testimony of the other of the victims together with Ortiz's testimony together with the physical evidence in the scientific evidence. Correct. Well, none of the other victims could identify anybody. They all corroborated Ortiz on his latest story given a trial about how this offense went down. There's no question about that. We're not denying that, that the what has been corroborated, but not the who. And we're arguing that the DNA evidence, which only shows him as a middle minor profile, whatever that means. And when there's other unidentified profiles, that leaves it open. It's inconclusive. My point is, how does how does that evidence overcome the common standard? Your obligation show that the outcome of the evidence is insufficient. There was evidence that was presented that perhaps Garcia knew Solis from some other relationship. I don't know if they were friends or whatever the deal was. It could be that and there was even a police report or one of the stories that Ortiz said that the red and black mask came from Garcia, whether it was from his house or whatever they met. Maybe Ortiz maybe met Garcia in October prior to this offense. Maybe there was a party. Maybe they had masks of the is a middle minor profile on that red and black mask, even less loci on the gravely gray glove. So it does not corroborate who committed this offense. The what is definitely corroborated. But Ortiz's testimony generally is so unbelievable. He gave four stories between his interrogations and the plea negotiations. Four different stories. He came in at the trial and gave a fifth story. Um, talking about how it happened, who did what and who was where the one consistency through this whole thing. And the one time that binds everything together is Nathaniel Solis. Solis is Ortiz's cousin. Solis masterminded the whole thing. He drove Ortiz and maybe a third person to the Chestnut Street home to grab the drugs from the Magana's at their home for Ortiz's testimony. That all came from Ortiz's testimony. And Ortiz identified Solis as a participant as the driver early on, just within a few days of the offense. Correct. He did. And he also identified the defendant as the his partner who entered the home within days and identified him by his nickname. Ricky Cobra folks. Correct. Well, that never changed. That never Well, you know, within days, he said it was Ricky Cobra folks. Correct. Well, at trials, when he originally said he said that in early interviews with the police that it was Ricky Cobra folks that went in with him. Correct. Not originally. Originally, one of his statements was that he he was well, there's an evident. I can't remember the page. I looked at the record. I read the record within days in November. He told the police that the person that went there with it was Ricky Cobra folks, and he identified the home on Benton Street. Correct. When he was driven with Fred. Yes, right. Right. So there's a house, but that doesn't mean that he was there as one of the intruders at the Chestnut Street house. The point is that you keep saying his testimony by his own admission. He lied. The state still continued to give him 20 years, even though he continued to lie. But he always identified Ricky Cobra folks as his partner who went in. And so Lisa's the driver. But then there was a police report saying that they had something against Cobra folks and Ricky Cobra folks, Rick Dog, whatever his nickname is going to be. They had something against him, and that was why he named him. That was one of the affidavits or one of the statements that was made to one of the people in this post trial motions. We're talking about trial evidence, right? But some of those statements to to the people in the jail were made during the pendency of the trial, but they didn't come out until after the trial. And in those statements is when he said, Well, actually, he testified he was afraid of his cousin Nathaniel. So these he would do anything to help him. He took the weight for him, so he's taking the weight for him and putting his finger on somebody else. Priscilliano Garcia. And the 20 year deal is incredible. He had the gun. He had his hands on the gun, or at least he had gunshot residue on him, which very well could have been from being shot. We don't know, but he had access to that gun. Aren't you making the same argument that was made to the trial court in closing arguments? Parts of it. I admit that. Yes. Uh, but we have to look at the fact that Judge Sheldon made incorrect rulings. What was that? Well, one of the rulings was that he said the DNA matched Priscilliano Garcia, and there was no testimony that it matched. In fact, Lyle Boykin said just the opposite, that there was no match. The use of the term matched by a trial court is that we do it on the appellate court. You make those are used the term match in, uh, briefs. It's not a finding. The judge is saying, in his opinion, that DNA came from this individual doesn't necessarily mean that it's a match in its scientific sense, like Boykin's testimony. He wouldn't call a match unless it matches that ball. Look at correct at everyone. And that does not mean that that evidence is insufficient because the defendant was excluded to the rest of the population. But it's and that's the difference. You know, all we had was DNA in this case, just on the mask with individuals saying that and the and the profile on the mask came back to, um, your client that your argument that would not be enough to convict because the mass could have ended up. There's DNA could have ended up there on some innocent, some innocent reason, correct? But here we have Ortiz's testimony, which puts your client in the residence, correct? And he's the liar. Yes. And you're saying that we should just look at Ortiz's testimony and accept any innocent explanation for the DNA and a mask and review in this case. But there is an innocent explanation that is offered by the record that they knew each other. So leave. So Lisa and Garcia did know each other. There's no evidence in the record that your client was ever in contact with that mask, except during the course of this offense. There's no evidence that whoever else was on that mask was in contact with that mass, except during the defense, either. It was a mixed profile. You make the point, try to make a point that the absence of a hit for Solis, uh, the Solis is not was not in the database. Wasn't the testimony that he wasn't a database. Boy can testify that he wasn't a database. But there's no comparison. Well, he was run through the database and boy kids. Testimony is that that's that means he's not. He's not. It's not his DNA in the mask. He was run. The DNA was run through the database. And so Lisa's Solis was in the database. So Solis is excluded as the minor no comparison. That doesn't matter because he's in the database. You only do a comparison if there is a potential hit or a hit, and then you get your confirmatory sample from the suspect and run it. Do you understand the way it works? Yes. If Solis is in the database, the DNA profiles are run through the database and there's no hit, then it's not. So Lisa's DNA. But it begs the question why there was no sample taken from Solis. He's seen at the scene. It's run through the database, but he was seen at the scene, Your Honor. He was in the yellow hoodies standing out by the car. He was there. He was involved, and nobody bothered to run those tests, get a sample from him and run the test. That doesn't matter. If you know that the person is in the database and you run the profiles through the database. If Solis is on the mask, then there's going to be a hit. But how do they come up with some of the other people? They didn't take buffalo swabs from every single person that was in that mixed profile. They needed to do that. Again, it's circular, circular argument. He's in the database. Boykins testimony. Why do you suggest the absence of a hit for Solis is really not as significant as Boykin states. He says he's in the database. We ran the profiles through the database. There's no hit for Solis. There were how many people in that mixed profile? How many different people showed up in that mixed profile? 1234. They did not test all of those people. We don't know if any of the other ones showed up in the database. We don't know who they were. It could have. It could have been Nathan Delgado, who was also seen standing on that white Impala afterwards. We don't know. Came back for your client. I'm sorry. There was a potential match for your client. Middle minor profile. Then they obtained a sample and confirmed it. A middle minor profile. Yes. Which does not mean that it's conclusively and Boykin said it is not the same as the match that Ortiz was and even Lupe Magana on the gray glove or whichever items those were on. It is not the same. It is inconclusive. According to your briefs, the defendant asked for more time to investigate the claims that were made in the affidavit. So let's move on to that, that those other issues. Okay. As for the Crankle issue, did you want to talk about the crank? Okay. As for the Crankle issue there, Mr Garcia raised a whole slew of different claims of ineffective assistance of counsel. We're gonna focus just on four of them. The first one is Chris Wheaton's failure to fully investigate Solis as the other suspect, the second intruder. Again, there were police reports that showed that Solis, who was wearing a yellow hoodie, was standing outside by the white Impala. Robert Magana in one of the police reports said that one of the intruders wore a yellow hoodie. The fact that they wore masks, Solis knew all these people, so they had to wear masks so that his identity would be hidden. But Chris Wheaton never really looked into the police reports and never really fully investigated Solis as the potential other intruder. So Solis is that was the major theory of his defense, though. Yes, it was. But he didn't have anything to back it up. It's one thing to stand and argue. It is another thing to have something to back it up. And granted, he doesn't have to prove anything. His his theory was, is he what he made his response to the defendant's allegations was that he did focus on Solis as the intruder, and he cross examined Ortiz extensively regarding his truthfulness, impeached him with his statements. Correct? Yes. He recalled Trujillo and cross examined him. And Trujillo testified that he always thought Solis was one of the intruders. Correct? Yes. But then when he asked Trujillo why there was a prosecutor's objection that was sustained, and he never went any further with that impeachment. And to be clear, Wheaton came into this case more than two years after it was pending. Correct? Yes. There were two other private attorneys plus the public defender. So he's like the fifth wheel. Correct? Yes. Yes. But that shouldn't stop him from doing his job. All the other lawyers ineffective as well. I don't know that I would call them ineffective. I don't know. I don't. They didn't come as far as this in the process, so I don't know that I could go that far to say that they were ineffective. No. But the fact is that there were reports showing that Solis was there, and Wheaton did not do an adequate job in. I'm sorry. Well, fact that Solis was there doesn't necessarily mean your client wasn't. That's kind of the problem I'm having. If this was supposedly just two people who supposedly carried this thing off instead of two people plus a private, your argument would be much stronger. But if there are three people, uh, and one of the perps is testifying against your client and Mr. Solis is identified as a driver, I don't see how a rational trier of fact would necessarily have to conclude that it had a reasonable doubt because it seems as if there's a cohesive argument for a story or interpretation or explanation that would establish that Solis was a defendant, not to the exclusion of your client. There was actually another person, though. There was a different third person. The police report that was the different third person, Nathan Delgado. He was seen standing with Solis at the White Impala by the police. There was a police report. Officer Boats and Boston. I can't remember what the officer's name is. His report showed that Nathan Delgado was standing there. Delgado was wearing a black T shirt, blue jeans, and there were two dark color jackets in the Impala. So there was a third person that was not Priscilliano Garcia, which means that there may have been a fourth person involved. But we don't know that that would be speculation. That's your point. We don't know. Right. So that raises reasonable doubt as to Garcia being there. So that's really people. So at least being with another person doesn't say anything about whether or not he was one of the intruders, does it? So at least being outside near the car in the backyard where the White Impalas Park with another person after the offense. What does that say about whether or not he was involved? The second intruder during the melee inside with no blood seen on him, correct? No, but the individuals inside were bleeding. There had been blood because two of them had been struck in the head and had lacerations to their heads. Right. And the police had an opportunity to close to closely view. They spoke to Delgado and to Solis, correct? I don't quite report. They got their identification. It means by inference they talked to him. I would think yes, but I don't know. There's no documentation that report that Solis had any blood spatter or any blood on him, correct? I don't recall that being in the report. You would have expected if Solis was the one who pistol whipped. We know that both both people Ortiz and Solis both used firearms, at least according to most of the testimony. Right. And both use those firearms as bludgeons to strike these people. But there's no documentation. There's any blood on Solis, correct? The police apparently just let him go because they believe that he had no involvement at the time. Right at that time. Yes. But the way it went down, depending on which version you believe, the second intruder went into the dining room and he's the one that bludgeoned Justin Richard. Ortiz is the one that went into the bedroom and I hit Lupe and it sounded like it was a gunshot and all that kind of stuff. And then his melee occurred. But the second intruder after minimal what sounded like minimal participation in the melee ran from the house. So the fact that there's no blood on him or none that was visible or noticeable by the police is not necessarily conclusive that he was not in the house. What were the improper factors for sentencing that you wish to emphasize? The one main factor is that the judge, Judge Halleck emphasized, but I admit he called it awfully slight criminal history, but he made this comment that Mr Garcia had chosen this path. His business in life was drugs and that just doesn't bear out. I mean, he had one simple conviction in 2007, I think it was for unlawful possession of cannabis and he got court supervision. That would imply that there was just a minimal amount of marijuana in his possession and that was terminated successfully. He never had anything other than that, except for a juvenile one, 1995 or whatever year that was, that was unlawful possession of a controlled substance and a gun thing. That doesn't show somebody who's involved in the drug business for his entire life. The other one is the harm and I realize that that doesn't necessarily apply to the home invasion because that that conviction was changed to a three rather than a five. But it still goes to the murder that you can't consider the harm since death is the harm. Well, the other element to that is people were harmed in the home invasion. Other people besides the murder victim were and it goes to the home invasion, right? Yes, I believe my time was up. Any more questions? Thank you, Your Honor. Miss Joseph. Good morning, Your Honors. May it please the court, counsel. I'll briefly touch on a few of the things that were discussed by previous counsel and then open this up for whatever questions you can may continue to have. As far as the reasonable doubt, I think your honors pointed out, um, some of the evidence that did collaborate Ortiz's testimony. This was not a situation like Wilson, Ash and Nat, which the defendant cited in the brief where there was absolutely nothing to collaborate the evidence. I could not find in any of the cases requiring collaborating evidence to be 100% conclusive. As we know, um, a conviction may be sustained by a that had a very, very, very high odds of looking as if it was. We'll put it in these terms close to a match. Um, although scientifically could not be matched, it did corroborate the testimony that the defendant was the one who was present in the home. Um, as well as he could not be excluded from the glove. Obviously, that was not as strong, but the mask, um, supports Ortiz's testimony. Oh, further. As far as reasonable doubt goes, um, counsel kept bringing up the fact that we don't know it could have, you know, the mass could have come from something else, or it could have been Delgado. Just because there is another explanation, it doesn't raise that so keeping that in mind, there was sufficient evidence that ties the defendant to the, um, home invasion and the murder in this case. As far as was there any other questions on what about the improper factor? It's aggravation. Yeah. As far as, um, as far as the harm or the criminal court's comment about the defendant's choice of business. Was that supported by the record? Is there any evidence in the record to show that he was in a drug trade from an early age? Yeah. As far as I'm going to get the wording of the judge, there was his occupation of professional calling since an early age dealt with the underworld of the drug and drug business. The drug business. Any evidence to support that? The fact that he was involved with drugs from an early age is present in the juvenile conviction. As far as the business goes, that comes out more in the facts of the specific case where they went to rob the house for the purpose of taking drugs. You had Ortiz's testimony that said we met him several times to get drugs from him. Whether the business aspect of it existed from an early age, that is less clear. But his exposure to drugs, there is evidence to support that. But the court went on to note that he had a very slight criminal history. Yes. So he did consider both a slight criminal history, but that that criminal history was involving drugs from an early age. What's your response to the critical argument that Mr. Wheaton should have done more in pinning the guilt on Mr. Solis? As it was discussed, Mr. Wheaton came into the case sometime into it. I don't I don't have the date in front of me as to when the Miss Forensic Scientist Boykin ran the DNA tests. But the fact that Solis did not hit upon the DNA was support for the fact that Solis was probably not the person in the house. Ortiz stuck by his statement that it was Solis that was driving. It was the defendant who was in the house and the fact that the physical evidence was not matching that which put Solis in the house. The it was trial strategy not to further investigate where there was not the evidence that was supporting it. And he counseled the best he could, making making the argument that it was Solis. He did the cross examinations the best he could. He was not getting the answers he wanted to hear. But the evidence was not supporting it. The fact that Solis was found, I don't know. Remember, there's a few houses away standing outside. Well, that makes sense when Ortiz said that he was the driver and he was supposed to be there for a getaway car and he was supposed to be a block of block. He said he was gonna park down at the end of the alley, which is essentially where he was. So the fact that he was there goes along with the other evidence supporting that he was a participant in the whole plan, but it did not necessarily support the fact that he was the one inside the house. What about the allegation that Mr Wheaton should have been more aggressive in pursuing the alibi defense? It appears that he he did, um, did try to go on the alibi defense. Um, he had two potential witnesses who were not providing the supporting documentation for him to pursue it. And then mid trial, when the jail recordings came out, the trial strategy had to shift because that was no longer something with the potential damaging evidence that could have come out in the jail recordings pursuing the alibi witness, um, or the alibi, um, evidence. Wheaton commented that that would have been more damaging than how do you put the evidence on? So I honestly, I honestly don't know from the record whether he did not investigate the alibi defense because he did have people ready to call. However, mid trial, new developments happened and it was trial strategy not to put that evidence on in the tapes. Um, the defendant's wife tells him you shouldn't be talking about the alibi or essentially words to that effect because Mr Wheaton cautioned them against talking. Correct. I believe so. I cannot remember the exact details of what was on the recordings. We talked to his wife many, many times, correct? Yes. And there was also maybe that was that may have been the post trial. There was another woman as well. And I don't know if that was the, I don't know if I'm mixing up the two sets of tapes. The prosecutor turned turned the tapes over while the case was still on trial. That was during the trial. That was during the trial. That was before the defense. I believe that was before the defense put on their case. Um, and then his claims that he didn't investigate an alibi defense. The record doesn't support that when he was ready to call. Um, I believe Ms Montero. But when that came up mid trial, the strategy changed and the alibi defense was was not the best choice in Wheaton's view. Any other questions? I don't know. Yeah. Okay. The people of the state of Illinois ask that you affirm the defendant's conviction of sentence. Thank you. Miss Silver. Back to the DNA. Um, I can't remember exactly what was just said, but the DNA corroborates only that Mr Garcia had contact with the red and black mask. She said it corroborates that he was there. That's not necessarily true. It just corroborates that he had contact with the mask and the contact was in the mouth area. I believe that swabs that were taken from the mouth area where you one would expect. I believe so. Yes, I believe that was working testimony. But I would also point out that in one of the incarnations of Ortiz's story, those that red and black mask was from Garcia. It was maybe his mask, but he got it from Garcia. So having his DNA and it would not have been unusual. And I emphasize again that it was only a middle minor profile even found around the mouth. Um, so it would not be unusual for his argument. Um, the slight criminal history going from 1995 until 2007 and having only a minor cannabis charge is not a drug business person. That is not even a heavy user, in my opinion, in front of what we've seen in other cases about the facts of this case that the court was considering, which, of course, it can do in sentencing. He was, if you that Mr Garcia was there. Yes, but we're arguing that that he has maintained his innocence all along and we continue to maintain his innocence. So it would not be him. But after a finding of guilty on these charges, isn't it appropriate for the court to consider the totality of the facts of the trial he or she has just heard? But I would also point out. Yes, that is true. But yes, I would also point out that we're still going from 1995 with a juvenile conviction, which we don't even know what it was the business aspect, right? Business aspect. You have how many years? My math really is bad. However many years that is in between there with nothing. And then from 2007 until this with nothing. Um, if indeed he was involved with this, this was just, uh, an anomaly, a fluke that he got roped into this somehow. Um, and as for the alibi defense, your honor's asked about the alibi defense. Um, he was not ready to call Priscilla Montero or Priscilla on a quail are according to the affidavits that Montero filed after to go along with the Crankle and Quailers affidavit. Wheaton told them pretty much on the eve of trial don't come. But then in opening statements, he says to Judge Sheldon, I'm going to be presenting evidence that he was in Chicago and couldn't even have been there during this offense. That's just bad lawyering. That's not a reasonable assistance. That's the trial court heard Mr Wheaton's explanation and actually the judge who heard that did not hear the trial, but he read trial transcripts and he heard Mr Wheaton's explanation. And with respect to the affidavits, uh, and I'm talking about not an individual affidavits, just collectively, didn't the trial judge suggest that he found the affidavits to be essentially concocted? I don't know if he was referring to the ones with the Crankle. I know he referred to the ones with the third amended motion for new trial as dovetailing into each other and appeared to be crafted by the same craftsman. But I was going over those again last night and I was looking at the synopsis of the state put in their brief of what those three affidavits said from Seidel Perez and Gary Castle. They don't seem to dovetail. They each have different things in them. And even if they did dovetail, we don't mean that they were true. I mean, that just seems to make sense. What about the tapes? Which takes the tapes where the defendant's talking to his wife and she's telling him not to talk and he's overriding her and then saying nailed this down, etcetera. Wasn't that very damaging to any potential defense, including alibi? Possibly. When a defendant tries to concoct a defense, it's very damaging testimony. It also could be interpreted as he had no faith in Chris Wheaton and he was again, Wheaton was his lawyer and he did not fire Wheaton until after the denial of the first post trial motion. Correct? That is true. And for maybe post conviction purposes, there may have been conversations in which he said that he was not satisfied with him prior to the crankle hearing. According to your briefs, the defendant asked for more time to investigate the claims made in the affidavits and to refine the motion. The second, can you identify where the defendant asked for more time to refine the motion? Um, don't I have that cited in the brief? I can't remember right off hand. Um, say about that. Okay. Um, let me take one quick look and maybe I can find that. I apologize. I don't have that right at my hand. That's all right. Um, that's all right. Okay. Well, 4 12 and 4 34 30 are where they filed. Um, but yeah, it was, they were asking for the continuity. If there are no more questions, we ask that I'm arguing one reverse and on the other ones order neutral. Thank you. I'll be a short recess.